# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 5, 2010

## STATE OF TENNESSEE v. MARK A. OWENS

**Direct Appeal from the Circuit Court for Lake County**
**No. 09-CR-9297      R. Lee Moore, Jr., Judge**

---

**No. W2010-00314-CCA-R3-CD - Filed November 24, 2010**

---

The defendant, Mark A. Owens, was convicted by a Lake County jury of the sale of less than .5 grams of cocaine, a Class C felony, and was sentenced by the trial court as a Range III, persistent offender to ten years in the Department of Correction. The sole issue he raises on appeal is whether the evidence was sufficient to sustain his conviction. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which J.C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

Noel H. Riley, II, Dyersburg, Tennessee, for the appellant, Mark A. Owens.

Robert E. Cooper, Jr., Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Lance E. Webb, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

According to the State's proof at trial, on August 12, 2008, a confidential informant who was working for Investigator Joseph Vernon and Sergeant Danny Tippit of the Lake County Sheriff's Department made a controlled drug buy of .4 grams of powder cocaine from the defendant at the defendant's Tiptonville home. As a result, the defendant was indicted for the sale of less than .5 grams of a Schedule II controlled substance, a Class C felony.

At trial, Investigator Vernon testified that before the drug buy the informant met him at the jail, where she and her vehicle were searched, an audio recording device was placed on her person, and she was given $50 in confidential funds. He said he had instructed her to make buys from any street level dealer in Tiptonville with whom she thought she could transact business, and she proposed either the defendant or Cody Doyle as two possibilities. She then drove past Doyle's house as he and Deputy Tippit followed in an unmarked vehicle. Doyle, however, was not out front and the informant continued without stopping to the defendant's home, where she parked her vehicle, walked to the front door, knocked, was admitted, and then emerged approximately five minutes later.

Investigator Vernon testified that he heard the informant ask for the defendant at the door to the home and for "50 hard," or $50 of crack cocaine, when she entered the house. However, due to the background noise and the fact that the microphone "was cutting in and out," he was unable to distinguish anything else until he heard the informant say, "I'm good," as she exited the house. He said that the informant returned to her vehicle, got inside, and proceeded directly to their pre-established meeting location, where she handed the drugs she had purchased to Deputy Tippit.

Investigator Vernon testified that the informant, who at the time of the controlled buy had a pending charge for the introduction of contraband into a penal institution, was paid $50 for her work in each controlled buy case. In addition, he promised that he would inform the district attorney of the help she provided in his drug investigations. He explained that the contraband charge had resulted from her attempt to bring pills into the jail when she arrived for her weekend service in an unrelated case and that it had later been dismissed after the Tennessee Bureau of Investigation determined that the pills were not a controlled substance. He further testified that there were no specific targets to his drug investigation and that had the informant purchased the drugs from someone other than the defendant, it would have made no difference in the compensation she received for her work in the case. He said that approximately fifteen or twenty minutes after he and Deputy Tippit had collected the drugs from the informant, he drove back by the defendant's home to verify his address.

On cross-examination, Investigator Vernon testified that the pills that the informant attempted to bring into the jail had been hidden inside her vagina. He acknowledged that he had no personal knowledge about what transpired inside the defendant's house and that a Windstar van was not at the residence during the transaction.

Deputy Angela Ballard of the Lake County Sheriff's Department, who searched the informant prior to the controlled buy, testified that she ran her hands underneath the informant's clothing and patted down her groin area but did not conduct a cavity search.

Sergeant Danny Tippit testified that he searched the informant's vehicle for drugs and money before the drug buy and then followed her in an unmarked vehicle to the defendant's home, where she went to the front door, knocked, and asked for the defendant. He said he heard her ask for "a 50 hard," but he was unable to distinguish anything else said until he heard her announce "I'm good" as she came back outside. He stated that she walked straight back to her vehicle, drove to their prearranged meeting place, and gave him the narcotics, which he turned over to Investigator Vernon. He then performed "a standard pat search" of her body through her clothing. In addition, he had her pull her bra up through her shirt and shake it to ensure that she had nothing hidden inside. At that point, he discovered that the microphone of the audio recording device was broken away from the wire. He identified a brown and black Ford pickup truck in a photograph of the defendant's home, taken during the drug transaction, as a vehicle that belonged to the defendant. On cross-examination, he acknowledged that the defendant also owned a 1999 Windstar van.

The confidential informant testified that she had been convicted of DUI, sentenced to serve weekends at the Lake County Jail, and was caught on one of those weekends as she attempted to smuggle tobacco and Tylenol PM into the jail hidden inside her vagina. She said that her mother then approached Investigator Vernon about the possibility of her working as a confidential informant in drug cases. Although her understanding was that her contraband charges would likely be dismissed, Investigator Vernon never made that specific promise but instead told her that he would talk to the district attorney and get her "whatever leniency they could."

She testified that she told Investigator Vernon that she thought she could buy drugs from either Cody Doyle or the defendant. When she drove by Doyle's home, however, she did not see him standing out front where he usually was when home, so she continued to the defendant's house, where she saw his brown truck parked outside. The informant testified that she knocked at the door and was admitted by an individual she knew by the nickname "Lay-Low." Another individual whom she knew by sight but not name was also inside, and she asked the men if "Big Mark," or the defendant, was there. The men announced her presence to the defendant, who was in his bedroom, and he met her at the door to his bedroom. She asked him if he "had a 50," meaning $50 worth of "dope," and the defendant answered that he had some powder. The defendant then handed her a baggie of white powder, and she gave him the $50 in confidential funds that the deputies had earlier given her. Afterwards, she left the defendant's home, got into her vehicle, and drove straight to the prearranged meeting place, where she gave the drugs to Sergeant Tippit.

On cross-examination, the informant testified that she used the money she received from the sheriff's department to pay her bondsman, but that her real motivation for participating in the drug investigation was her desire to avoid more jail time.

Special Agent Forensic Scientist Dana Parmenter of the Tennessee Bureau of Investigation, an expert in the field of drug identification, testified that the white powder submitted for analysis in this case consisted of .4 grams of cocaine.

Tabatha Tanner, the defendant's girlfriend, testified on the defendant's behalf that the defendant was away from home in his van on the afternoon of August 12, 2008, when the informant came to the house. She said that she was in a bedroom and that "Black Face" and "Bud" were sitting in the living room. The informant was walking out the door as Tanner came out of her bedroom and when she asked the men what the informant had wanted, they told her "nothing." According to her testimony, the defendant did not return home until at least an hour after the informant had gone.

The defendant denied that he sold any drugs to the informant on August 12, 2008, or at any other time and said that he was running errands in his 1999 Windstar van on the day that the alleged transaction occurred.

Investigator Joseph Vernon, called as a rebuttal witness by the State, testified that when he drove back by the defendant's home approximately twelve to seventeen minutes after the drug transaction took place, the defendant was standing on the front porch of the residence.

## ANALYSIS

The defendant contends that the evidence was insufficient to sustain his conviction, arguing that there was no proof beyond a reasonable doubt that he was the one who sold the cocaine to the confidential informant. The State responds by arguing that it was within the province of the jury to accredit the testimony of the confidential informant, which established that she bought the cocaine from the defendant, over that of the defendant and his girlfriend, who both claimed that the defendant was not at home at the time the controlled buy was made. We agree with the State.

When the sufficiency of the evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues

-4-

are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

We agree with the State that this is a classic case involving vastly differing testimony by witnesses whose credibility had to be determined by the jury as the trier of fact. By convicting the defendant of the indicted offense, the jury showed that it obviously accredited the testimony of the informant, who identified the defendant as the individual who sold her the cocaine, over that of the defendant and his girlfriend, who both claimed otherwise. We conclude, therefore, that the evidence at trial, when viewed in the light most favorable to the State, was more than sufficient to sustain the defendant's conviction.

## CONCLUSION

Based on the forgoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE